1  Gilmur R. Murray (SBN 111856)
2  Derek G. Howard (SBN 118082)
   Scott J. Yundt  (SBN 242595)
3  **MURRAY & HOWARD, LLP**
   436 14th Street, Suite 1413
4  Oakland, California 94612
   Telephone: (510) 444-2660
5  Facsimile: (510) 444-2522
6  gmurray@murrayhowardlaw.com
   dhoward@murrayhowardlaw.com
7  syundt@murrayhowardlaw.com

8  *Attorneys for Plaintiff Brenden G. Maloof and the Class*

9

10              **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12

13

14 **BRENDEN G. MALOOF**, individually and )   Case No.
   on behalf of all others similarly situated, )
15                                            )
                    Plaintiffs,              )   **CLASS ACTION COMPLAINT**
16         vs.                                )
                                             )   **COMPLAINT FOR VIOLATIONS OF**
17 **AIR NEW ZEALAND,**                       )   **THE SHERMAN ANTITRUST ACT 15**
   **ALL NIPPON AIRWAYS,**                    )   **U.S.C. § 1**
18 **AMERICAN AIRLINES,**                     )
   **AMR CORPORATION,**                       )   **JURY TRIAL DEMANDED**
19 **CATHAY PACIFIC AIRWAYS,**                )
   **CHINA AIRLINES,**                        )
20 **EVA AIRWAYS,**                           )
   **JAPAN AIRLINES INTERNATIONAL,**          )
21 **MALAYSIA AIRLINES,**                     )
   **NORTHWEST AIRLINES,**                    )
22 **QANTAS AIRWAYS,**                         )
23 **SINGAPORE AIRLINES,**                    )
   **THAI AIRWAYS,**                          )
24 **UNITED AIRLINES,**                       )
25              Defendants.                   )
                                             )
26                                            )
                                             )
27 _____ )

28

MURRAY & HOWARD, LLP
436 14ᵗʰ Street, Suite 1413
Oakland, CA  94612
Tel. (510) 444-2660
Fax (510) 444-2522

---

                    CLASS ACTION COMPLAINT

On behalf of himself and all others similarly situated, plaintiff BRENDEN G. MALOOF ("Plaintiff"), hereby brings this action under the federal antitrust laws, the Sherman Antitrust Act of 1890 (15 U.S.C. §§ 1 *et seq.*) and Sections 4 and 16 of the Clayton Antitrust Act of 1914 (15 U.S.C. §§ 15 and 26) against Defendants, for treble damages and all other appropriate relief.

## I. NATURE OF THE ACTION

1.      This action arises from an unlawful price fixing conspiracy by the Defendants and is brought on behalf of all individuals and entities that purchased transpacific passenger air transportation services ("Transpacific Passenger Air Transportation") from Defendant airlines, their subsidiaries, agents, or co-conspirators, during the period between January 1, 2004 through at least August 2007 ("the Class Period").

2.      Defendants and their co-conspirators participated in an unlawful combination and conspiracy to fix or maintain purported surcharges for fuel ("Fuel Surcharges") paid by Transpacific Passenger Air Transportation consumers by fixing, raising, maintaining, and/or stabilizing Fuel Surcharges, the purpose and effect of which was to artificially inflate said prices, causing damage to Plaintiff and the class members.  Defendants' unlawful activities, as described herein, took place within the flow of commerce to passenger air customers throughout the world, and had a direct, substantial and reasonably foreseeable effect upon interstate and international commerce in the United States. A primary locus of this conspiracy was within the United States, including in the State of California, in which Defendants have major operations and from which they conduct many international flights.

3.      Throughout the Class Period, Defendants sold Transpacific Passenger Air Transportation and charged collusively fixed Fuel Surcharges on this transportation, particularly on transpacific flights to and from the United States. San Francisco International Airport ("SFO") and Los Angeles International Airport ("LAX") are considered the international U.S. gateways to Asian and Pacific countries.

## II. JURISDICTION AND VENUE

4.      This complaint is brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to obtain injunctive relief and recover treble damages and the costs of suit, including

MURRAY & HOWARD, LLP
436 14ᵗʰ Street, Suite 1413
Oakland, CA  94612
Tel. (510) 444-2660
Fax (510) 444-2522

1   reasonable attorneys' fees, against Defendants for the injuries sustained by the Plaintiff and the

2   members of the Class for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. This Court

3   accordingly has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 (a), Sections 4

4   and 16 of the Clayton Act, and 15 U.S.C. §§ 15, 22 and 26.

5          5.        This Court has *in personam* jurisdiction over the Defendants, and each of them

6   because, *inter alia*, each such Defendant engaged in an illegal price fixing scheme and conspiracy

7   that was directed at and/or caused injury to persons and entities residing, located in or doing business

8   in the Northern District of California and throughout the United States.

9          6.        Venue is properly laid in this district under 15 U.S.C. §§ 15, 22 and 26 and 28 U.S.C.

10  § 1391 (b) and (c), because, during the Class Period, one of more of the Defendants transacted

11  business, maintained offices, was found, or had agents within this district; and because a substantial

12  part of the events giving rise to Plaintiff's claim occurred, and a substantial portion of the affected

13  interstate trade and commerce described below has been carried out, in this district.  No other forum

14  would be more convenient for the parties and witnesses to litigate this case.

15  **III.  PARTIES**

16          **A.        Plaintiff**

17          7.        Plaintiff **BRENDEN G. MALOOF** purchased Transpacific Passenger Air

18  Transportation from one or more of the Defendants and paid Fuel Surcharges during the class period

19  and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

20          **B.        Defendants**

21          8.        Defendant **Air New Zealand** is a New Zealand company and the New Zealand

22  national flag carrier with its principal place of business at Quay Tower, 29 Customs St. West,

23  Auckland, 1020, New Zealand. Air New Zealand conducts business in the United States and has

24  airport locations throughout the world, including in the U.S. and specifically at SFO and LAX.

25          9.        Defendant **All Nippon Airways** (also referred to as "ANA") is a Japanese company

26  with its principal place of business at Shidome-City Center, 1-5-2, Higashi-Shimbashi, Minato-ku,

27  Tokyo 105-7133, Japan.  All Nippon Airways conducts business in the United States and has airport

28  locations throughout the world, including in the U.S. and specifically at SFO and LAX.

MURRAY & HOWARD, LLP
436 14th Street, Suite 1413
Oakland, CA. 94612
Tel. (510) 444-2660
Fax (510) 444-2522

2
**CLASS ACTION COMPLAINT**

10.     Defendant **American Airlines, Inc.** is a Delaware corporation with its principal place of business at 4333 Amon Carter Boulevard MD5675, Fort Worth, TX 761155. American Airlines, Inc., is a subsidiary of Defendant **AMR Corporation**, a Delaware corporation with its principal place of business at 4333 Amon Carter Boulevard MD5675, Fort Worth, TX 761155.  Defendants **American Airlines, Inc.** and **AMR Corporation** are collectively referred to herein as "**American Airlines**."  American Airlines conducts business in the United States and has airport locations throughout the world, including in the U.S. and specifically at SFO and LAX.   Defendant American Airlines is the world's largest airline in terms of fleet size and total passenger-miles transported. American Airlines served some 260 cities in 50 countries with around 4,200 daily flights and carried approximately 120 million passengers in 2006.

11.     Defendant **Cathay Pacific Airways** is a Hong Kong-based company with its principal place of business at 9 Connaught Road, Central Swirel Housepox Box 1 GPO, Hong Kong K3.  Cathay Pacific Airways conducts business in the United States and has airport locations throughout the world, including in the U.S. and specifically at SFO and LAX.

12.     Defendant **China Airlines** is a Taiwanese company with its principal place of business at 131 Nanking E Rd., Section 3, Taipei, Taiwan.  China Airlines conducts business in the United States and has airport locations throughout the world, including in the U.S. and specifically at SFO and LAX.

13.     Defendant **EVA Airways** is a Taiwanese company with its principal place of business at 16F.-1, No. 207, Fusing Road, Taoyuan City, Taoyuan County, Taiwan. EVA Airways conducts business in the United States and has airport locations throughout the world, including in the U.S. and specifically at SFO and LAX.

14.     Defendant **Japan Airlines International** is a Japanese company with its principal place of business at 4-11, Higashi-Shinagawa 2-chrome, Shinagawa-Ku, Tokyo 140-8605, Japan. Japan Airlines International conducts business in the United States and has airport locations throughout the world, including in the U.S. and specifically at SFO and LAX.

15.     Defendant **Malaysia Airlines** is a Malaysian corporation with its principal place of business at MAS Complex A, Sultan Abdul Azia Shah Airport, 47200 Suband, Selangor Darui

MURRAY & HOWARD, LLP
436 14ᵗʰ Street, Suite 1413
Oakland, CA  94612
Tel. (510) 444-2660
Fax (510) 444-2522

3
**CLASS ACTION COMPLAINT**

Ehsan, Malaysia.  Malaysia Airlines conducts business in the United States and has airport locations throughout the world, including in the U.S. and specifically at LAX.

16.    Defendant **Northwest Airlines** is a Delaware corporation with its principal place of business at 2700 Lone Oak Parkway, Eagan, MN 55121. Northwest Airlines conducts business in the United States and has airport locations throughout the world, including in the U.S. and specifically at SFO and LAX.  Northwest Airlines is the oldest American carrier with consistent name identification and operates over 200 flights weekly between the United States and Asia.

17.    Defendant **Qantas Airways** is an Australian company with its principal place of business at 203 Coward Street, Qantas Centre, Mascot NSW 2020 C3.  Qantas Airways conducts business in the United States and has airport locations throughout the world, including in the U.S. and specifically at SFO and LAX.

18.    Defendant **Singapore Airlines** is a Singapore company with its principal place of business at Airline House, 25 Airline Road, 819829 Singapore.  Singapore Airlines conducts business in the United States and has airport locations throughout the world, including in the U.S. and specifically at SFO and LAX.

19.    Defendant **Thai Airways** is a Thailand company with its principal place of business at 89 Vibhavadi-Rangsit Road, Bangkok, Thailand 10900. Thai Airways conducts business in the United States and has airport locations throughout the world, including in the U.S. and specifically at LAX.

20.    Defendant **United Airlines** is a Delaware corporation with its principal place of business at 77 W. Wacker, Chicago, IL 60601. United Airlines conducts business in the United States and has airport locations throughout the world, including in the U.S. and specifically at SFO and LAX.

C.    **Unnamed Co-Conspirators and Agents**

21.    On information and belief, certain other persons, corporations and other entities conspired with Defendants in the antitrust violations alleged herein and have performed acts and made statements in furtherance of the antitrust violations and conspiracies alleged herein.

///

MURRAY & HOWARD, LLP
436 14ᵗʰ Street, Suite 1413
Oakland, CA  94612
Tel. (510) 444-2660
Fax (510) 444-2522

22.     At all relevant times, Defendants' unlawful acts were authorized, ordered or performed by their directors, officers, managing agents, employees or other authorized representatives.  Plaintiff is informed and believes, and thereon alleges, that each and every Defendant was and is the agent of each of the remaining Defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency.  Each Defendant ratified and/or authorized the wrongful acts of each of the Defendants.  Defendants, and each of them, have participated as members of the conspiracy or acted with or in furtherance of it, or aided or assisted in carrying out its purposes alleged in this Complaint, and have performed acts and made statements in furtherance of the violations and conspiracy.

## IV.   CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23 (a) and (b) (3), on behalf of the following Class (the "Class"):

> All individuals or entities (excluding governmental entities, Defendants, and their parents, predecessors, subsidiaries, affiliates, and their co-conspirators) who purchased Transpacific Passenger Air Transportation, and who paid a Fuel Surcharge on their tickets from any of the Defendants and their co-conspirators or any predecessor, subsidiary, or affiliate of each, at any time during the period from January 1, 2004 to at least August 2007.

24.     The number of absent class members is so large, and they are so disbursed geographically, that joinder of all Class members is impracticable.  The identity of the Class Members may be readily determined from Defendants' own ticketing and other records.

25.     Plaintiff's claims are typical of the claims of the Class in that Plaintiff is a purchaser of Transpacific Passenger Air Transportation, all Class members were damaged in the same manner by the same wrongful conduct of Defendants and their co-conspirators as alleged herein, and the relief sought is common to the Class.

26.     There are questions of law or fact common to the Class, including:

a.     Whether Defendants engaged in a combination or conspiracy among themselves to fix, raise, maintain, and/or stabilize Transpacific Passenger Air Transportation and Fuel Surcharge prices charged effecting commerce in the United States and throughout the world;

b.     The duration of the conspiracy alleged in this Complaint and the nature and character of the acts performed by Defendants in furtherance of the conspiracy;

c.     Whether the alleged conspiracy violated Section 1 of the Sherman Act;

d.     Whether the conduct of Defendants, as alleged in this Complaint, caused injury to the businesses or property of Plaintiff and the other members of the Class;

e.     The effect of Defendants' conspiracy on the Transpacific Passenger Air Transportation and Fuel Surcharge prices charged in the United States and throughout the world during the Class Period; and

f.     The appropriate measure of damages sustained by Plaintiff and other members of the Class.

27.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

28.     A class action is superior to any other alternatives, if any, for the fair and efficient adjudication of this controversy. Class treatment will permit the effective prosecution of relatively small claims of many class members that otherwise could not practically be litigated and will prevent inconsistent or varying adjudications that might result from prosecution of individual actions.

## V.   THE ILLEGAL CONSPIRACY

29.     Consumers perceive air transport as essentially a fungible commodity, and may readily substitute seats on one carrier for another. As a result, airline fares are the primary factor driving customer choice as between airlines.

30.     Defendants and other airlines impose additional surcharges and fees to consumers, beyond the price of the flight itself, ostensibly to defray costs of fuel and other operations.

31.     During the Class Period, Defendants have combined and conspired to fix the prices of Fuel Surcharges added to international passenger air transportation tickets above competitive levels.

32.     Since 2004, Defendants have begun to charge substantially uniform Fuel Surcharges. Each Defendant, however, has at all relevant times had different actual costs of fuel, because each ///

MURRAY & HOWARD, LLP
436 14ᵗʰ Street, Suite 1413
Oakland, CA. 94612
Tel. (510) 444-2660
Fax (510) 444-2522

6
CLASS ACTION COMPLAINT

employs different hedging or other purchasing strategies, and these uniform fuel surcharges thus have not reflected the actual fuel costs.

33.    Fuel Surcharges are a currently a widely-used feature of the global air transportation market, in which airlines charge extra fees to their customers, above and beyond basic flight rate charges, with the intent of defraying certain external costs of the carriers.

34.    Beginning in 2004, Defendants agreed to act in concert with one another in demanding Fuel Surcharges to defray fuel costs and agreeing when and how much to increase the Fuel Surcharges to Transpacific Passenger Air Transportation consumers.

35.    But for Defendants' collective agreement to impose, raise, and maintain Fuel Surcharges, Defendants would not have been able to perpetrate the extent to which they increased the prices of their Fuel Surcharges. Defendants entered into agreements to raise and stabilize Fuel Surcharges in an unlawful fashion.

36.    Defendants' executives, as well as other air carriers' executives, met formally or informally over the years at various trade meetings or meetings of trade associations, such as the International Air Transport Association ("IATA"), the Association of Asian Pacific Airlines, oneworld, and Star alliance.  At one or more of these meetings Defendants conspired to artificially inflate Fuel Surcharges on Transpacific Passenger Air Transportation.

37.    The **Association of Asia Pacific Airlines** ("AAPA"), a 17-member aviation trade association, played a significant role in the conspiracy as ten of the Defendants are members of AAPA.  AAPA was formed in 1965 and is currently the most important organization representing the interests of Asia/Pacific air passenger carriers.  The AAPA member airlines transport nearly one-fifth of all global air passenger traffic.  The North American Market is the largest long-haul market segment for AAPA.  Its member airlines carried more than 13 million passengers between Asia/Pacific and North American sectors.

38.    At its formation in 1965, the AAPA was an informal meeting of airline executives meant to facilitate regional cooperation.  In 1966, four Asian airlines joined the then-named Orient Airlines Research Bureau.  The organization developed over the years until it reached its current membership in the 1990s.  The group changed its name from Orient Airlines Association to

MURRAY & HOWARD, LLP
436 14th Street, Suite 1413
Oakland, CA  94612
Tel. (510) 444-2660
Fax (510) 444-2522

7
**CLASS ACTION COMPLAINT**

Association of Asia Pacific Airlines in 1996.  The purpose of the group has also changed to its current function as described by the organization, "AAPA speaks with a common voice on behalf of the Asia Pacific carriers and puts forward Asian perspectives when dealing with governments, aircraft manufacturers, airport authorities and other organizations on industry issues."

39.     AAPA's organizational structure includes a handful of permanent staff, a Director General, an Executive Committee, and the Assembly of Presidents to whom the Director General reports. The Assembly of Presidents is comprised of the Chief-Executives and senior-level officers of the member airlines who attend period Assembly of Presidents meetings hosted by a member airline.

40.     Another important trade organization in the conspiracy is **oneworld**, an airline alliance formed on February 1, 1999 by Defendant American Airlines, British Airways, Defendant Cathay Pacific, Canadian Airlines, and Defendant Qantas Airways. The oneworld alliance describes itself as "a global alliance that brings together ten of the world's biggest and best airlines." In 2006, oneworld members carried approximately 320 million passengers or around 1 in 30 of the world population.

41.     The Geneva-based **International Air Transport Association** is another key trade organization in the conspiracy.  All of the defendants are members of the IATA, which was founded in 1945 in Havana, Cuba.  IATA represents more than 240 airlines comprising 94% of scheduled international air traffic. It describes itself as "the prime vehicle for inter-airline cooperation."  An agreement reached at an IATA meeting in Geneva on May 28, 2004 played a role in triggering the Fuel Surcharge conspiracy.

42.     Defendants are members of the following alliances:

| Alliances | | Defendant Members Include: |
|---|---|---|
| ***Association of Asia Pacific Airlines*** | | Air New Zealand<br>All Nippon Airways<br>Cathay Pacific Airways<br>China Airlines |

MURRAY & HOWARD, LLP
436 14ᵗʰ Street, Suite 1413
Oakland, CA  94612
Tel. (510) 444-2660
Fax (510) 444-2522

| | |
|---|---|
| ***Association of Asia Pacific Airlines (cont'd)*** | EVA Airlines |
| | Japan Airlines International |
| | Malaysia Airlines |
| | Qantas Airways |
| | Singapore Airlines |
| | Thai Airways |
| ***International Air Transport Association*** | Air New Zealand |
| | All Nippon Airways |
| | American Airlines |
| | Cathay Pacific Airways |
| | China Airlines |
| | EVA Airlines |
| | Japan Airlines International |
| | Malaysia Airlines |
| | Northwest Airlines |
| | Qantas Airways |
| | Singapore Airlines |
| | Thai Airways |
| | United Airlines |
| ***oneworld*** | American Airlines |
| | Cathay Pacific Airways |
| | Japan Airlines International |
| | Qantas Airways |
| ***SkyTeam Alliance*** | Air New Zealand |
| | All Nippon Airways |
| | Singapore Airlines |
| | Thai Airways |

MURRAY & HOWARD, LLP
436 14ᵗʰ Street, Suite 1413
Oakland, CA 94612
Tel. (510) 444-2660
Fax (510) 444-2522

**CLASS ACTION COMPLAINT**

43.     Various Defendants are also partners in business arrangements called code share agreements. The US Department of Transportation defines code sharing as "a marketing arrangement in which an airline places its designator code on a flight operated by another airline, and sells tickets for that flight."  The first code share agreement occurred in 1990 when Qantas Airways and American Airlines combined services between an array of U.S. and Australian cities. "Code" refers to the identifier used in flight schedule, generally the 2-character International Air Transport Association airline designator code and flight number. A code share agreement is a business partnership that allows airlines to earn revenue by selling tickets on a partner's flight.

44.     Code sharing agreements are monitored by the Department of Transportation; however, these agreements provide a covert mechanism to conduct illegal activity. Every Defendant has code sharing partnerships with other Defendants.

45.     The chart below identifies code sharing agreements of Defendants according to the U.S. Department of Transportation and Defendants:

| Defendant | Code shares with the following Defendants: |
|---|---|
| *Air New Zealand* | EVA Airways |
| | Qantas (Tasman route) |
| | Japan Airlines International |
| | Northwest Airlines |
| | Singapore Airlines |
| | Thai Airways |
| | United Airlines |
| *All Nippon Airways* | Asiana Airlines |
| | EVA Airways |
| | Malaysia Airlines |
| | Singapore Airlines |
| | United Airlines |
| *American Airlines* | Cathay Pacific Airways |

MURRAY & HOWARD, LLP
436 14th Street, Suite 1413
Oakland, CA  94612
Tel. (510) 444-2660
Fax (510) 444-2522

| | |
|---|---|
| **American Airlines** (cont'd) | China Airlines |
| | EVA Airways |
| | Japan Airlines International |
| | Qantas Airways |
| | Singapore Airlines International |
| **China Airlines** | American Airlines |
| **Cathay Pacific Airways** | American Airlines |
| | Japan Airlines International |
| | Thai Airways |
| **EVA Airways** | Air New Zealand |
| | American Airlines |
| | All Nippon Airways |
| | Qantas |
| | American Airlines |
| **Japan Airlines Intl.** | Air New Zealand |
| | American Airlines |
| | Cathay Pacific Airways |
| | Korean Air |
| | Northwest Airlines |
| | Qantas Airways |
| | Singapore Airlines |
| | Thai Airways |
| **Malaysia Airlines** | All Nippon Airways |
| | Thai Airways |
| **Northwest Airlines** | Air New Zealand |
| | Asiana Airlines |
| | Japan Airlines International |
| | Korean Air |

MURRAY & HOWARD, LLP
436 14th Street, Suite 1413
Oakland, CA  94612
Tel. (510) 444-2660
Fax (510) 444-2522

11
**CLASS ACTION COMPLAINT**

| | |
|---|---|
| *Qantas Airways* | Air New Zealand |
| | American Airlines |
| | EVA Airways |
| | Japan Airlines International |
| *Singapore Airlines* | Air New Zealand |
| | Asiana Airlines |
| | All Nippon Airways |
| | Malaysia Airlines |
| | United Airlines |
| *Thai Airways* | Air New Zealand |
| | China Airlines |
| | Japan Airlines International |
| | Malaysia Airlines |
| | United Airlines |
| *United Airlines* | Air New Zealand |
| | All Nippon Airways |
| | Asiana Airlines |
| | Singapore Airlines |
| | Thai Airways |

46.     Over the years, executives of Defendant airlines have attended numerous meetings where cartel-like activity was accomplished.  These include, without limitation:

47.     **The International Air Transport Association, Special Meeting, Geneva, May 28, 2004.** Fuel costs and surcharges were the main topic of this meeting. The *Gazette* (Montreal, Quebec) reported on June 1, 2004, that member carriers of the International Air Transport Association might raise international fares by as much as five percent to help cover a surge in jet fuel costs. The *Gazette* further reported that the proposed Fuel Surcharge fare increase of between two

///

MURRAY & HOWARD, LLP
436 14th Street, Suite 1413
Oakland, CA  94612
Tel. (510) 444-2660
Fax (510) 444-2522

12
**CLASS ACTION COMPLAINT**

percent and five percent "was agreed at a May 28 meeting of the association," which represents more than 270 airlines worldwide.

48.   **The International Air Transport Association Annual General Meeting and World Air Transport Summit, Singapore, June 6-8, 2004.**  Airline executives from numerous defendant companies attended this annual summit.  Giovanni Bisignani, IATA CEO said in a welcoming statement, "While record high fuel prices challenge our profitability it is time to put our efforts toward rebuilding the industry."  Among the panelists were, Chew Choon Seng, CEO, Singapore Airlines, Glen Titlton, CEO, United Airlines, and Ralph Norris, CEO, Air New Zealand. Immediately following this meeting on June 8, 2004, Japan Airlines International and All Nippon Airways both filed applications with the Japanese Ministry of Land, Infrastructure and Transportation to raise Fuel Surcharges for international passenger fares by five percent on routes to and from Japan effective July 1st due to high fuel costs.  In a news release announcing the Fuel Surcharge hike, Japan Airlines International said:

> **"The application follows a special meeting of the members of the International Air Transport Association in Geneva, May 28, (2004) when a resolution was discussed to raise fares in the wake of increased fuel prices. This resolution has now been adopted."**

49.   **2nd Annual Asia Pacific & Middle East Aviation Outlook Summit 2006, December 5-6, 2005 Kuala Lumpur, Malaysia:**  The theme of this meeting was "Towards Best Practice; Maximizing Revenues and Minimizing Costs."   Guests included  Dato Seri Bashir Ahmad, Malaysia Airport's CEO; Willy Boulter, Commercial Director for Virgin Atlantic Airways; and Stanley Kuppusamy, Vice President, International Relations, Singapore Airlines.  Fuel Surcharges were a topic of discussion.

50.   **Asia Pacific Aviation: Forging Ahead, 4th Annual China Airfinance Conference May 22, 2006, Shanghai:**  Topics of discussion included: economics impacts of high fuel prices— challenges in passing on the impact of high fuel prices to consumers, airline profitability, costs

///

MURRAY & HOWARD, LLP
436 14th Street, Suite 1413
Oakland, CA. 94612
Tel. (510) 444-2660
Fax (510) 444-2522

13
**CLASS ACTION COMPLAINT**

challenges, competition, regulatory concerns, airfares and inflation and U.S. domestic political concerns.

51.     **Aviation Emergency Response 2006, AAPA sponsored, September 19-21, 2006 Bangkok, Thailand:** This meeting was attended by international airport officials and AAPA member executives. Meetings were held on increasing revenues in the transpacific area by way of Fuel Surcharges and other financial means.

52.     **3rd Annual Asia Pacific & Middle East Aviation Outlook Summit, November 9-10, 2006 Singapore:** Participating in this meeting were executives from most of the Defendant airlines, including  Geoff Dixon, CEO of Qantas and Huang Cheng Eng, Executive VP  for Singapore Airlines.  One of the issues presented and discussed was *"Fighting Costs: Fuel prices and managing risk exposure."*

53.     **AAPA Forum, November 28-29, 2006 Bandar Seri Begawan, Brunei Darussalam:** More than 120 aviation industry stakeholders attended this meeting, organized by AAPA.  At this meeting, Defendants and others discussed fuel surcharges.

54.     **Asia Pacific Aviation Summit, July 24-25, 2007 Sydney, Australia:** This meeting was put on by the Asia Pacific aviation industry. Some of the issues discussed included the impact of the investigation by the U.S. Department of Justice into fare price fixing.  Another topic was "working together efficiently" to diffuse the investigation of added Fuel Surcharges.

## VI.   THE GOVERNMENT INVESTIGATIONS

55.     The U.S. Department of Justice ("DOJ") began investigating air passenger Fuel Surcharge conspiracies worldwide in 2006. The ongoing investigation includes transpacific flights to and from the United States by many of the Defendants named herein including All Nippon Airways, American Airlines, Asiana Airlines, Japan Airlines, Korean Airlines, Northwest Airlines, Qantas Airlines and United Airlines.

56.     In its initial investigation into transatlantic air passenger Fuel Surcharge conspiracies, the DOJ focused on British Airways. On August 23, 2007, British Airways settled its fare price fixing claim with the DOJ for $300 million in criminal fines over its passenger transatlantic routes. (The DOJ's second biggest fine ever.) In its news release, the DOJ said: "that between August 2004

MURRAY & HOWARD, LLP
436 14th Street, Suite 1413
Oakland, CA  94612
Tel. (510) 444-2660
Fax (510) 444-2522

14
**CLASS ACTION COMPLAINT**

and February 2006, British Airways engaged in a conspiracy to suppress and eliminate competition by fixing the Fuel Surcharge charged to passengers on long-haul international flights, including flights between the United States and the United Kingdom." The same day the DOJ filed charges, the United Kingdom's Office of Fair Trading (OFT) announced British Airways had agreed to pay a fine of approximately $246 million for collusion on long-haul passenger Fuel Surcharges.  This was the first time that the DOJ Antitrust Division and the OFT have brought parallel charges.

57.     That same day, Korean Air settled its fare price fixing claim with the DOJ for $300 million in criminal fines over its transpacific flights from the United States to Korea (thus tying British Airways for the DOJ's second biggest fine ever). Consistent with DOJ press releases, the DOJ investigation into transpacific air passenger Fuel Surcharge price fixing is ongoing.

58.     Korean Air's unnamed co-conspirator in the transpacific air passenger Fuel Surcharge price fixing was widely reported to be Asiana Airlines, which sought amnesty under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004. This is not the first time Korean Air and Asiana Airlines have been implicated in collusion and anticompetitive behavior.  In 2001, the Korean Fair Trade Commission fined Korean Air and Asiana for conspiring to set passenger air transportation services in Korea.

59.     In an August 13, 2007 news release, **Qantas Airways** disclosed that its Chief Executive Officer Geoff Dixon said that "Qantas make a provision of $40 million to cover a potential fine that may be imposed in the USA" as a result of international air cargo Fuel Surcharge price fixing.  Dixon was also quoted as follows:

> **"Qantas previously disclosed that it had been cooperating with regulators in the USA, Europe, Australia, New Zealand and other jurisdictions in their investigation into alleged price fixing in the air cargo market. These investigations revealed that the practice adopted by Qantas Freight and the cargo industry generally to fix and impose fuel surcharges was likely to have breached relevant competition**

///

MURRAY & HOWARD, LLP
436 14ᵗʰ Street, Suite 1413
Oakland, CA  94612
Tel. (510) 444-2660
Fax (510) 444-2522

15
**CLASS ACTION COMPLAINT**

1   **laws. To date, it has not been possible to quantify any direct or**

2   **indirect liability associated with these matters.**

3         **On 1 August 2007, the U.S. Department of Justice**

4   **announced that British Airways and Korean Air had agreed to**

5   **plead guilty and pay separate US$300 million criminal fines for**

6   **their roles in conspiracies to fix prices of passenger and cargo**

7   **flights. British Airways subsequently announced that US$200**

8   **million of its fine related to cargo. Based on these**

9   **developments, a decision has been made to make a US$40**

10   **million ($47 million) provision in the 2006/07 Financial**

11   **Accounts."**

12       60.    It has also been reported that **Japan Airlines International** has set aside at least $100

13   million for potential fines for anticompetitive practices in the air passenger and cargo industry from

14   a global Fuel Surcharge price fixing probe by the DOJ and the European Commission.  According to

15   an October 6, 2007 article in the Japanese daily newspaper *Asahi Shimbun*:

16         **"The company's move comes after the U.S. Justice Department**

17   **fined British Airways PLC and Korean Air Lines Co. $300**

18   **million each in August for fixing the prices of passenger and**

19   **cargo flights with other airlines…The companies allegedly**

20   **conspired to set fuel surcharges when oil prices rose."**

21   **VII.  FRAUDULENT CONCEALMENT**

22       61.    Throughout the relevant period, Defendants affirmatively and fraudulently concealed

23   their unlawful conduct from Plaintiff and the Class.

24       62.    Plaintiff and the members of the Class did not discover, and could not discover

25   through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as

26   alleged herein.  Nor could Plaintiff and the members of the Class have discovered the violations

27   earlier than that time because Defendants conducted their conspiracy in secret, concealed the nature

28   of their unlawful conduct and acts in furtherance thereof, and fraudulently concealed their activities

MURRAY & HOWARD, LLP
436 14ᵗʰ Street, Suite 1413
Oakland, CA  94612
Tel. (510) 444-2660
Fax (510) 444-2522

16
**CLASS ACTION COMPLAINT**

through various other means and methods designed to avoid detection. The conspiracy was by its nature self-concealing.

63.     Plaintiff and the members of the Class could not have discovered the unlawful conduct at an earlier date through the exercise of reasonable diligence because of Defendants' active and purposeful concealment of their unlawful activities.

64.     Defendants engaged in a successful, illegal price fixing conspiracy with respect to Fuel Surcharges and other fees, which they affirmatively concealed, in at least the following respects:

a.     By agreeing among themselves not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme;

b.     By engaging in secret communications in order to further their illicit Transpacific Passenger Air Fuel Surcharges cartel; and/or

c.     By giving false and pretextual reasons for their pricing for Transpacific Passenger Air Fuel Surcharges thereon, and their increases, during the relevant period and by describing such pricing and increases falsely as being the result of external costs rather than collusion.

65.     As a result of Defendants' fraudulent concealment of their conspiracy, Plaintiff and the Class assert the tolling of any applicable statute of limitations affecting the rights of action of Plaintiff and the members of the Class.

## VIII.   INJURY TO PLAINTIFF AND THE CLASS

66.     During the Class Period, Plaintiff and the members of the Class, because of Defendants' antitrust violations, paid excess Fuel Surcharges and other fees they would not have paid absent such violations.

67.     As a result, Plaintiff and the members of the Class it seeks to represent have been injured and damaged in their business and property in an amount to be determined according to proof.

68.     The illegal combination and conspiracy alleged herein has had the following effects, among others:

MURRAY & HOWARD, LLP
436 14ᵗʰ Street, Suite 1413
Oakland, CA  94612
Tel. (510) 444-2660
Fax (510) 444-2522

17
CLASS ACTION COMPLAINT

a.    price competition in the pricing of Transpacific Passenger Air Fuel Surcharges thereon has been restrained, suppressed, and/or eliminated;

b.    price competition in the contracting of Transpacific Passenger Air Transportation has been restrained, suppressed, and/or eliminated;

c.    prices for Transpacific Passenger Air Fuel  Surcharges thereon charged by Defendants have been fixed, raised, maintained, and/or stabilized at artificially high, non-competitive levels; and

d.    members of the Class have been deprived of the benefit of free and open competition.

69.    As a direct and proximate result of the illegal conspiracy, Plaintiff and the members of the Class have been injured and financially damaged in their respective businesses and property, in that they have paid Fuel Surcharges and other fees during the Class Period they would not have paid in the absence of the illegal conspiracy.

## IX.  CLAIM FOR VIOLATIONS OF 15 U.S.C. §1

70.    Plaintiff incorporates by reference all of the above allegations as if fully set forth herein.

71.    During the Class Period Defendants engaged in a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize the prices of Transpacific Passenger Air Fuel Surcharges in the United States and throughout the world in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

72.    In formulating and effectuating the alleged contract, combination, or conspiracy, Defendants engaged in anti-competitive activities, the purpose and effect of which were to artificially raise, fix, maintain, and/or stabilize the prices of Transpacific Passenger Air Fuel Surcharges.  These activities included the following:

a.    agreeing to charge, fix, raise, maintain, and/or stabilize Fuel Surcharges charged in the United States and throughout the world;

b.    signaling increases in the price Fuel Surcharges by, *inter alia*, publicly announcing their increases;

**MURRAY & HOWARD, LLP**
436 14ᵗʰ Street, Suite 1413
Oakland, CA  94612
Tel. (510) 444-2660
Fax (510) 444-2522

18
**CLASS ACTION COMPLAINT**

c.    moving prices Fuel Surcharges in lockstep; and announcing new Fuel Surcharges prices nearly simultaneously or within days of each other; and

d.    charging Fuel Surcharges at the agreed-upon rates.

73.    During the Class Period, the Defendants increased, as a ratio to external costs and profits, the Transpacific Passenger Air Fuel Surcharges they charged.  These increases in Transpacific Passenger Air Fuel Surcharges cannot be explained by actual increases in fuel prices or supply/demand forces, but rather were the result of anticompetitive conduct.

74.    During the Class Period, Plaintiff and members of the Class purchased Transpacific Passenger Air Transportation directly from Defendants (or their agents, subsidiaries, and/or controlled affiliates).

75.    As a direct result of the unlawful conduct of Defendants and their co-conspirators in furtherance of their continuing contract, combination or conspiracy, Plaintiff and other members of the Class have been injured in their business and property in that they have paid more for Transpacific Passenger Air Transportation than they would have paid in the absence of Defendants' and their co-conspirators' price fixing of Fuel Surcharges.

## X.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

A.    The Court determine that this action may be maintained as a class action under Rule 23 (a) and (b) (3) of the Federal Rules of Civil Procedure;

B.    The Court adjudge and decree that the contract, combination and conspiracy alleged herein is a per se unreasonable restraint of trade in violation of Section 1 of the Sherman Act;

C.    Judgment be entered against Defendants, jointly and severally, and in favor of Plaintiff and the Class for damages as allowed by law as determined to have been sustained by them;

D.    Each of the Defendants, successors, assigns, parents, subsidiaries, affiliates and transferees, and their respective officers, directors, agents and employees, and all other persons acting or claiming to act on behalf of Defendants or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the ///

MURRAY & HOWARD, LLP
436 14ᵗʰ Street, Suite 1413
Oakland, CA  94612
Tel. (510) 444-2660
Fax (510) 444-2522

19
CLASS ACTION COMPLAINT

1  combinations, conspiracy, agreement, understanding or concert of action, or adopting any practice,

2  plan, program or design having a similar purpose or effect in restraining competition;

3       E.    The Court award Plaintiff and the Class attorneys' fees and costs, and

4  pre-judgment and post-judgment interest as permitted by law; and

5       F.    The Court award Plaintiff and the Class such other and further relief as may

6  be necessary and appropriate.

7  **XI.  JURY TRIAL DEMAND**

8  Pursuant to Federal Rule of Civil Procedure 38 (b), Plaintiff demands a trial by jury of all of

9  the claims asserted in this Complaint so triable.

10 Dated:    November 15, 2007       MURRAY & HOWARD LLP

12        By:  _____

13           SCOTT J. YUNDT
   *Attorneys for Plaintiffs and the Class*

**CLASS ACTION COMPLAINT**

MURRAY & HOWARD, LLP
436 14th Street, Suite 1413
Oakland, CA  94612
Tel. (510) 444-2660
Fax (510) 444-2522